IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN WILBURN CARROLL, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 11-4007 |
| COUNTY OF CHESTER TAX CLAIM BUREAU | : | |

**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                                         **August 17, 2011**

**I.     Introduction**

Plaintiff Allen Wilburn Carroll ("Plaintiff") filed this pro se action against the County of Chester Tax Claim Bureau ("Defendant"), alleging that Defendant violated his constitutional rights by failing to pay Plaintiff the proceeds of a judicial sale of his property in "public money" rather than by check. Plaintiff's claims in this federal district court follow years of litigation in Pennsylvania state court and amount to nothing more than an attempt to overturn an unfavorable state court judgment.

Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, Insufficiency of Process, and Failure to State a Claim Upon Which Relief Can be Granted, Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(4), and 12(b)(6).  (ECF No. 4)  The Court finds it lacks subject matter jurisdiction over Plaintiff's claim pursuant to the Rooker-Feldman doctrine and will grant Defendant's Motion to Dismiss.

**II.    Factual and Procedural History**[1]

---

[1] These facts are derived from Plaintiff's complaint, titled "Petition for Redress of Injuries Under Authority of 28 U.S.C. § 1331, 28 U.S.C. § 1357, and the Just Compensation and Due

1

On June 6, 2006, Defendant seized Plaintiff's property and evicted Plaintiff as a result of his failure to pay delinquent property taxes. Compl. ¶¶ 9-11. After the seizure and sale, Defendant was ordered to disburse "money" received from the sale. Compl. ¶ 12. Defendant issued Plaintiff a check for $24,878.78, the remaining balance after satisfaction of Plaintiff's liabilities. Compl. ¶ 14. Plaintiff refused to accept the check because it was not "money" or "public money." Compl. ¶ 17.[2] Plaintiff demanded payment in "public money" and sued Defendant in the Court of Common Pleas of Chester County, Pennsylvania. Compl. ¶¶ 20, 23. Judge Edward Griffin ordered that the check be placed into an interest-bearing bank account in Plaintiff's name. Compl. ¶ 26. See In re Carroll, No. 05-01354, 2007 WL 5479809 (Pa. Com. Pl. Dec. 21, 2007) (unpublished), aff'd, Carroll v. County of Chester Tax Claim Bureau, 959 A.2d 956 (table) (Pa. Super. Ct. Jul. 21, 2008), appeal denied, 962 A.2d 1194 (table) (Dec. 17, 2008). Plaintiff avers that he did not receive a federal just compensation remedy or due process of law. Compl. ¶ 28. Plaintiff unsuccessfully appealed to the Superior Court of Pennsylvania,

---

Process Clause of the United States Constitution for Deprivation of Federally Secured Property Rights" ("the Complaint"). (ECF No. 1). Defendant's Motion to Dismiss supplies the court with additional facts concerning the parties' prior litigation; however, Defendant did not submit these facts by affidavit as is proper in connection with a factual attack on subject matter jurisdiction. See Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997).

[2] Plaintiff's Complaint cites Hagar v. Reclamation District No. 108, 111 U.S. 701 (1884) (affirming decrees that state court assessments made pursuant to an 1868 California law concerning the reclaiming of swamp and marsh land by the state were valid liens, and ordering sale of the lands). Compl. ¶¶ 8, 17, 38. The Supreme Court rejected the plaintiff's objections to the validity of the state's assessment, including its required mode of payment by gold and silver coin, based on the state's power to tax: "'Unless restrained by provisions of the federal constitution, the power of the state, as to the mode, form, and extent of taxation, is unlimited where the subjects to which it applies are within her jurisdiction.'" Hagar, 111 U.S. at 704, 709 (quoting In re State Tax on Foreign-Held Bonds, 82 U.S. 300, 319 (1872)). Hagar is inapposite to this case.

and then to the Supreme Court of the State of Pennsylvania, which denied review. Compl. ¶¶ 30-31. Plaintiff "exhausted all remedies from the State of Pennsylvania" before filing this suit.[3] Compl. ¶ 32. Plaintiff filed this suit seeking "an order commanding the Defendant Bureau to pay Plaintiff Carroll $24,878.78 of public money" plus costs.

### III.    The Parties' Jurisdictional Contentions

Plaintiff alleges federal question jurisdiction, identifying 28 U.S.C. § 1331, 28 U.S.C. § 1357, and the "due process" and "just compensation" clauses of the Fifth Amendment of the United States Constitution as the basis for his claim. Compl. ¶ 2.[4]

Defendant disputes that the Court has subject matter jurisdiction because Plaintiff essentially asks this Court to review and reject a judgment of the Pennsylvania state courts.[5]

### IV.    Standard of Review

When considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court's first task is to classify the motion as either a facial or a factual attack. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack concerns an alleged pleading deficiency, whereas a factual attack concerns the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites. Id.

---

[3] "Exhaustion" of remedies in state court does not permit Plaintiff to seek federal district court review of a state court judgment, as discussed below. See 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . .") (emphasis added).

[4] Diversity of citizenship under 28 U.S.C. § 1332(a)(1) would not be a basis for subject matter jurisdiction because both parties are Pennsylvania citizens. See Compl. ¶¶ 4-5.

[5] The Court will not review the other contentions raised in Defendant's Motion to Dismiss because it finds this argument dispositive.

On a facial attack, the Court must consider the allegations of the complaint as true. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In contrast, there are three important consequences of a factual attack: (1) there is no presumption of truthfulness; (2) the plaintiff bears the burden of proving subject matter jurisdiction; and (3) the Court has authority to make factual findings on the issue, and can look beyond the pleadings to do so. CNA, 535 F.3d at 145. For example, on a factual attack, the Court can consider affidavits, depositions, and other testimony to resolve factual issues bearing on jurisdiction. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997). Indeed, if the defendant attaches factual materials to its motion to dismiss, the Court must treat it as a factual attack. Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982). Here, Defendant has raised a factual attack on jurisdiction.

**V.   Discussion**

By statute, the only federal court with authority to review a state court judgment is the Supreme Court. 28 U.S.C. § 1257. The related judicial doctrine, named for Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), bars federal district court jurisdiction in cases where "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011). The doctrine stems from the federal district courts' limited power "to exercise original, not appellate, jurisdiction." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005).

In Rooker, the plaintiff sought a declaration in federal court that an Indiana state court judgment, affirmed by the state supreme court, was null and void. Rooker, 263 U.S. at 414. The plaintiff contended that the state court judgment violated her constitutional rights, including her right to due process and equal protection. Id. at 415. The Supreme Court explained that "it was the province and duty of the state courts to decide [the case] . . . If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." Id. However, because only the Supreme Court was empowered to "entertain a proceeding to reverse or modify the judgment for errors of that character," the Supreme Court held that the district court lacked jurisdiction over the federal case. Id. at 416. See also Feldman, 460 U.S. at 486-87 (holding the District Court of the District of Columbia lacked jurisdiction to review the judgment of the District of Columbia Court of Appeals' orders refusing to waive certain requirements for plaintiffs' admission to the D.C. bar, because it was "inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny [plaintiffs'] petitions").[6]

In Exxon Mobil, the Supreme Court distinguished the Rooker-Feldman doctrine, which concerns the constraints on the federal district courts' jurisdiction when a party seeks review of a state court decision, from preclusion, which applies when "a party attempts to litigate in federal court a matter previously litigated in state court." Exxon Mobil, 544 U.S. at 293. The Supreme Court reversed the Third Circuit and held the Rooker-Feldman doctrine did not apply where

---

[6] "The 'highest court of a state' as used in § 1257 includes the District of Columbia Court of Appeals." Feldman, 460 U.S. at 464.

"ExxonMobil plainly has not repaired to federal court to undo the Delaware judgment in its favor," but did so "to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue." Id. at 293-94.

Following Exxon Mobil, the Third Circuit concluded that the Rooker-Feldman doctrine bars federal district court jurisdiction in cases where:

"(1) the federal plaintiff lost in state court;

(2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments';

(3) those judgments were rendered before the federal suit was filed; and

(4) the plaintiff is inviting the district court to review and reject the state judgments."

Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010), cert. denied, 131 S. Ct. 1798 (quoting Exxon Mobil, 544 U.S. at 284).[7] The Third Circuit described the second requirement "as an inquiry into the source of the plaintiff's injury." Id. at 166. "The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" Id. at 167 (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)).

The Third Circuit applied this test to the facts of Great Western. The plaintiff had received unfavorable state court judgments concerning the issuance of an arbitration award and the dismissal of its contract and tort claims, and the Pennsylvania state supreme court denied its petitions for allowance of appeal. Id. at 161-62. Great Western then filed a federal civil rights

---

[7] The Third Circuit clarified that the oft-used phrase "inextricably intertwined" in pre-Exxon Mobil cases "does not create an additional legal test or expand the scope of Rooker-Feldman beyond challenges to state-court judgments." Great Western, 615 F.3d at 170.

action, "claiming deprivations of procedural and substantive due process," and "alleg[ing] that its state-court losses were the result of a 'corrupt conspiracy' between the named defendants and certain members of the Pennsylvania state judiciary to exchange favorable rulings for future employment as arbitrators . . . ." Id.  Great Western met the first and third requirements as a state court loser that filed federal suit following the state-court judgments. Id. at 171.  However, Great Western's claim that the state court decision was "predetermined" due to a "conspiracy" that "forced [it] to litigate in a rigged system" did not "assert injury caused by state-court judgments and seek review and rejection of those judgments." Id.  The alleged constitutional injury was "independent[] of the subsequent state-court decisions," which did not satisfy the second requirement. Id. at 172.  Additionally, Great Western did not meet the fourth requirement for review and rejection of state court judgments: "while Great Western's claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for Great Western to prevail." Id. at 173.  Therefore, the Third Circuit held that Rooker-Feldman was inapplicable and the federal district court had properly exercised jurisdiction over Great Western's lawsuit. Id.

Unlike Great Western and Exxon Mobil, this is plainly a case where the Rooker-Feldman doctrine applies.  Applying the Third Circuit's test in Great Western to the facts alleged, the Court finds as follows:

First, Plaintiff lost his state court action against Defendant for "public money."

Second, Plaintiff complains of violations to his federal constitutional due process and just compensation rights.[8] Although Plaintiff professes that the injury was caused by Defendant, which paid Plaintiff his proceeds by check rather than some other means Plaintiff prefers, this claim is not independent of the state court judgment resulting in the depositing of a check in an interest-bearing bank account in Plaintiff's name.

Third, the judgment in state court was entered before Plaintiff filed this federal action.

Fourth, Plaintiff invites "district court review and rejection of those judgments" of the Pennsylvania state court by asking this Court to order Defendant to pay him "$24,878.78 of public money." To do so would contradict the state court judgment that Defendant place Plaintiff's proceeds in a bank account.

Because all four requirements of the Rooker-Feldman doctrine are met, this Court cannot exercise subject matter jurisdiction over Plaintiff's claim.

**VI.    Conclusion**

For the reasons discussed above, the Court holds that it lacks subject matter jurisdiction over this action, and grants Defendant's Motion to Dismiss.

An appropriate Order follows.

O:\CIVIL 11-12\11-4007 Carroll v. County of Chester Tax\11-4007 Carroll v County MTD memorandum.wpd

---

[8] Plaintiff's response brief also refers to the Fourteenth Amendment and the Coinage Act of 1965, 31 U.S.C. § 5103, which defines legal tender. Pl.'s Opp'n at 6, 7, 10. Plaintiff does not raise an independent statutory claim.